UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RADE LUKAC, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-7156 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| ALEJANDRO MAYORKAS, Secretary, ) | |
| Department of Homeland Security; and ) | |
| KEVIN RIDDLE, Field Office Director, ) | |
| Chicago Field Office, ) | |
| U.S. Citizenship & Immigration Services, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Rade Lukac, a United States citizen, wanted to help his wife, a foreign national, secure a visa. But he had a big problem. Years ago, Lukac was convicted of a child pornography offense. Under the governing statute, he is ineligible to petition for visa sponsorship on his wife's behalf unless he demonstrated that he posed no risk to her. And it's up to the United States Citizenship and Immigration Services to decide whether he carried that burden.

Lukac prepared a petition showcasing their long relationship, cohabitation, and shared children. He pointed to his academic accomplishments. He also marshalled supportive letters from family and friends, professional psychological assessments, and medical records of his wife and children.

In the end, it wasn't enough. The United States Citizenship and Immigration Services denied Lukac's petition. The agency concluded that, in light of his criminal conviction, Lukac had failed to demonstrate that he posed no risk to his wife.

Lukac responded by filing suit. He claims that the agency reached its decision after taking a number of procedural shortcuts. As Lukac sees it, the agency failed to adequately explain its decision and failed to consider all of the evidence.

Defendants, in turn, moved to dismiss the case for lack of subject matter jurisdiction. The government points to statutory language that vests the agency with the "sole and unreviewable" power to make eligibility decisions.

For the reasons that follow, the Court concludes that it lacks jurisdiction over Lukac's challenge to the denial of his petition.

## Background

The Immigration and Nationality Act creates a visa application process for foreign nationals who are sponsored by "immediate relatives" in the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i), (b), (b)(2). Basically, a person can get a green card (*i.e.*, a Permanent Resident Card) and remain in the United States if the United States Citizenship and Immigration Services ("USCIS") determines that the person is an immediate relative of a citizen.

A citizen gets the ball rolling by petitioning the USCIS to classify a foreign national as an immediate relative. *Id.* at § 1154(a)(1)(A)(i). A citizen kicks off that process by submitting a so-called Form I-130 petition. *Id.*

Under the statute, the USCIS "shall" approve the petition "if [it] determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative" or is entitled to a preference. *See id.* at § 1154(b). The Secretary of State then authorizes the consular officer to "grant the preference status" to the beneficiary. *Id.*

But in 2006, Congress changed the framework by passing the Adam Walsh Child Protection and Safety Act. *See* Pub. L. No. 109-248, 120 Stat. 586. Congress created an

exception to the general rule that "any citizen" can file a petition. *See* 8 U.S.C. § 1154(a)(1)(A)(i).

The Adam Walsh Act flips the script for citizen-petitioners convicted of a "specified offense against a minor." *Id*. at § 1154(a)(1)(A)(viii)(I). That category covers "[p]ossession, production, or distribution of child pornography" and "[a]ny conduct that by its nature is a sex offense against a minor." *See* 34 U.S.C. § 20911(7).

The Act categorically bars such offenders from filing a visa petition on behalf of others, "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." *See* 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

So, for petitioners convicted of offenses involving child pornography, Congress presumptively denied visa beneficiary petitions, unless the Secretary (and only the Secretary) makes a finding that the citizen poses no risk. *See id.* at § 1154(a)(1)(A)(viii)(I); 34 U.S.C. § 20911(7).

The USCIS has issued guidance clarifying the Adam Walsh Act's application. *See* Donald Neufeld, Acting Associate Director, Domestic Operations, USCIS, *Transmittal of Standard Operating Procedure for Adjudication of Family-Based Petitions Under Adam Walsh Child Protection and Safety Act of 2006* (Sept. 24, 2008). In a case where the petitioner seeks a visa for an adult beneficiary, the USCIS "closely examine[s] the petitioner's specified offense and other past criminal acts to determine whether the petitioner poses any risk to the safety or well-being of the adult beneficiary." *Id.* The agency interprets section 1154(a)(1)(A)(viii)(I) to mean that the petitioner "must pose *no* risk to the safety or well-being of the beneficiary." *Id.* at

3

7 (emphasis added). The petitioner bears the burden of demonstrating that he poses no risk "beyond any reasonable doubt." *Id.*

Plaintiff Rade Lukac attempted to navigate through that regulatory framework to get a green card for his wife. In February 2020, Lukac filed an I-130 visa petition on behalf of his wife (Violeta Lukac), who is a foreign national. *See* Cplt., at ¶ 18 (Dckt. No. 1). They share children and live together in Cook County. *Id.* at ¶ 11; *see also* Pl.'s Resp., at 3 (Dckt. No. 11).

Under the statute, Lukac faced an uphill battle. He is a United States citizen, but he has a felony conviction for possessing child pornography. *See* Cplt., at ¶¶ 17–18 (Dckt. No. 1). In 2004, he was convicted of three counts of violating 18 U.S.C. § 2252A(a)(2)(A) and one count of violating 18 U.S.C. § 2252A(a)(5)(A) for activities relating to material containing child pornography. *See* Notice of Decision, at 3 (Dckt. No. 9-1).

Perhaps realizing that he fell within the Adam Walsh Act's categorical bar given his criminal convictions, Lukac submitted psychological assessments, character letters from friends, and his children's birth certificates in support of his petition. *Id.* He also filed extensive documentation of his criminal convictions. *See* Notice of Decision, at 2–3 (Dckt. No. 9-1).

On October 20, 2020, USCIS issued a Notice of Intent to Deny Lukac's petition, and requested more evidence relating to Lukac's child pornography conviction. *Id.* at 3; *see also* Cplt., at ¶ 19 (Dckt. No. 1). Lukac responded with the requested documents, more letters in support, and copies of his academic diplomas. *Id.*

USCIS ultimately denied Lukac's I-130 petition in a written decision. *Id.* at ¶ 20. The agency determined that Lukac had been convicted of a "specific offense against a minor" as defined by the Adam Walsh Act. *Id.* And it concluded that Lukac had failed to demonstrate beyond a reasonable doubt that he posed "no risk" to his wife, as the statute required. *Id.*

4

Lukac responded by suing Alejandro Mayorkas, the Secretary of Homeland Security, and Kevin Riddle, the Chicago Field Office Director for USCIS, in their official capacities to challenge the USCIS decision. He brings claims under the Administrative Procedure Act, alleging that USCIS violated the APA in two ways. *Id.* at ¶ 21.

First, Lukac asserts that the USCIS "fail[ed] to provide any analysis or explanation" as to how he poses a risk to his wife. *Id.* at ¶ 21. Second, Lukac argues that the decision failed to take into account all of the evidence that he submitted, including the couple's shared children, cohabitation, and educational accomplishments. *Id.*

As Lukac sees it, both shortcomings violated the APA's requirement that the agency "examine the relevant data and articulate a satisfactory explanation for its action." *See* Pl.'s Resp., at 2 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Lukac asserts that the Court therefore has jurisdiction through the federal question statute, 28 U.S.C. § 1331. He also invokes the Declaratory Judgment Act (which doesn't confer jurisdiction), and the Immigration and Nationality Act. *See* Cplt., at ¶¶ 2–9 (Dckt. No. 1) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977)).

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* Defs.' Mtn. (Dckt. No. 8).

## Analysis

Federal courts are courts of limited jurisdiction. *See Harrington v. Berryhill*, 906 F.3d 561, 566 (7th Cir. 2018). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Congress created the lower federal courts, and thus has the

5

power to define the scope of their power. *See* U.S. Const., art. III, § 1. When it comes to jurisdiction, Congress giveth, and Congress taketh away.

The statute at hand is a good example of how Congress can take away the power of the federal courts. Congress took away the power of courts to hear claims about immigration-related decisions involving petitions from individuals convicted of child pornography offenses. The statute creates a roadblock, and there is no way around it.

As a general matter, the statute deprives federal courts of the power to hear challenges to discretionary decisions by the USCIS. Under the statute, "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

A decision about the risks of someone convicted of child pornography is a discretionary decision under the statute. The Adam Walsh Act categorically bars such offenders from filing a visa petition on behalf of others, "unless the Secretary of Homeland Security, *in the Secretary's sole and unreviewable discretion*, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed." *Id.* at § 1154(a)(1)(A)(viii)(I) (emphasis added).

The Secretary's decision that a petitioner poses "no risk" to the beneficiary is a textbook example of a discretionary decision. The statute expressly grants authority to the Secretary to determine in his "sole and unreviewable discretion" that the petitioner poses "no risk" to the beneficiary. *Id.*

The statutory text is the beginning and the end of the analysis. The text forecloses judicial review of any action by the Secretary that falls within this grant of discretion. *See*

6

*Roland v. U.S. Citizenship & Immigr. Servs.*, 850 F.3d 625, 629 (4th Cir. 2017) ("It is clear that the USCIS has 'sole and unreviewable discretion' to determine whether a petitioner poses no risk."); *Gebhardt v. Nielsen*, 879 F.3d 980, 984 (9th Cir. 2018) (collecting cases holding the same).

Lukac concedes that the Secretary's "no-risk" determination is unreviewable by this Court. *See* Pl.'s Resp., at 2 (Dckt. No. 11). Even so, Lukac asserts that claims about APA violations can slip past the statutory bar on judicial review. As he sees it, the suit is about USCIS's compliance with mandatory administrative procedures rather than the agency's ultimate conclusion.

According to Lukac, "USCIS is still obligated to follow its own binding regulations, and to not act arbitrarily, capriciously, and to not abuse its discretion or act otherwise not in accordance with the law in issuing such a decision." *Id.* at 2–3. In his view, although USCIS's final *decision* is committed to agency discretion, the Court may still review whether the agency failed to follow its own binding regulations. *Id.*

Many other courts have considered and rejected that line of argument. In fact, every circuit court to have considered this statutory provision has reached the same conclusion. The statute means what it says: the exercise of discretion is unreviewable, and the ban on judicial review covers the process, too. *See Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 544 (11th Cir. 2019) ("The Act's jurisdiction-stripping language embraces both the process and ultimate no-risk conclusion."); *Bakran v. Sec'y, U.S. Dep't of Homeland Sec.*, 894 F.3d 557, 563 (3d Cir. 2018) ("Congress's use of the word 'determines' therefore grants the Secretary unreviewable discretion in both concluding that a petitioner poses no risk and the process by which the Secretary reaches this decision."); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir.

7

2018); *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 380–82 (6th Cir. 2017) (holding that questions of "*how* the Secretary exercises his 'sole and unreviewable discretion'" are beyond the court's jurisdiction) (emphasis added); *Roland v. U.S. Citizenship & Immigr. Servs.*, 850 F.3d 625, 628–30 (4th Cir. 2017); *Bremer v. Johnson*, 834 F.3d 925, 931 (8th Cir. 2016) ("This type of discretion necessarily includes authority to implement practices or procedures for making decisions."); *see also Davidson v. Mayorkas*, 599 F. Supp. 3d 767, 771–73 (W.D. Wis. 2022) ("Congress clearly intended to preclude review of the procedures used to determine whether a petitioner poses a risk to an alien beneficiary . . . . Complete discretion to make a determination necessarily includes the authority to implement practices and procedures for how that determination is made."); *Struniak v. Lynch*, 159 F. Supp. 3d 643, 653 (E.D. Va. 2016) ("[T]he term 'action' encompasses *any* act or series of acts that is discretionary, thus rendering insulated from judicial review an entire process . . . .") (cleaned up) (emphasis added).

This Court agrees with that analysis, and joins the chorus of cases. A petitioner cannot challenge the decision itself, or the process that the agency used getting there. A challenge to the result and a challenge to the route are equally out of bounds. The statute bars judicial review of both the destination and the journey.

The statutory text is tight, without a lot of wiggle room. It is up to the Secretary to determine if a citizen poses a risk. *See* 8 U.S.C. § 1154(a)(1)(A)(viii)(I). That decision is an exercise of "discretion." *Id.* And that discretion is "sole" and "unreviewable." *Id.* Opportunities for judicial review don't exactly leap off the page.

The word "sole" closes the door on any suggestion that a party can challenge the decision in federal court. *Id.* And the word "unreviewable" bolts the door shut. *Id.*; *see also Make The*

8

*Road N.Y. v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020) ("There could hardly be a more definite expression of congressional intent . . . ."). Courts can't review the unreviewable.

As a practical matter, there isn't much difference between challenging the decision itself and challenging how an agency got to the decision. After all, the end goal of challenging the process is to challenge the outcome of the process. That's the whole point. If courts could review the process of reaching the decision, that review might lead the agency to change its decision. But statute prevents anyone from second-guessing the decision.

By questioning the process of reaching the decision, a petitioner is basically challenging the decision itself. It's not hard to cast a bad decision in terms of a procedural shortcoming of some kind or another. *Cf. Doe v. McAleenan*, 926 F.3d 910, 911 (7th Cir. 2019) (noting that plaintiffs "cannot evade a jurisdiction-stripping statute by repackaging [] substantive complaints as procedural objections").

Allowing a challenge to the process is more than a foot in the door. It would create an opening that would blow a hole in statute. If that works, it's not exactly like going through the back door. It's more like blowing through the back door with a pickup truck.

From a separation of powers perspective, courts need to respect the boundaries set by Congress. After all, the Constitution entrusts Congress with the authority to define the jurisdiction of the federal courts. The judiciary must tread lightly when coming upon the statutory equivalent of a fence with a sign that says: "No Trespassing – Keep Out!"

The need to respect statutory boundaries is especially great when Congress has vested one branch, but not the other, with the power to make a particular decision. When Congress has opened the door to the executive branch, and closed the door to the judiciary, courts must be leery of inviting themselves inside and taking a seat at the table.

The APA is not a way to bore into the courthouse and get around the closed door, either. The APA does not apply when "statutes preclude judicial review," or when "agency action is committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(1), (a)(2); *see also E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) ("The APA is inapplicable because § 1252(g) precludes judicial review and because [the challenged decision] is discretionary."); *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 574 (7th Cir. 2017) ("Appellants cannot avoid the jurisdictional bar established by 8 U.S.C. § 1252 simply by raising a claim under . . . the APA."); *Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) ("[T]he APA is not a useful tool for aliens challenging immigration decisions."); *Boldt v. Jaddou*, 2023 WL 355171, at *3 (N.D. Ill. 2023) (noting that "[i]t is . . . well-settled that the APA cannot confer jurisdiction" where an agency action is committed to agency discretion). This case checks both boxes.

## Conclusion

For the foregoing reasons, the motion to dismiss for lack of jurisdiction is hereby granted.

Date: June 9, 2023

Steven C. Seeger
United States District Judge